UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DENNIS J.,

                Plaintiff,

      v.                                  **DECISION AND ORDER**
                                                  19-CV-1227S

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

        1.        Plaintiff Dennis J.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his applications for supplemental security income and disability insurance benefits under Titles II and XVI of the Act.  (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.        Plaintiff protectively filed his applications with the Social Security Administration on July 28, 2015.  Plaintiff alleged disability beginning February 17, 2011, due to obesity; varicose veins, venous insufficiency, status post-surgery; obstructive sleep apnea; degenerative disc disease of the lumbar and thoracic spine; respiratory disorder; hypertension; sarcoidosis[2]; and right foot plantar fasciitis (R.[3] at 115).  Plaintiff's

---

[1]In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

[2]Sarcoidosis is a disease characterized by widespread granulomatous lesions that may affect any organ or tissue of the body.  This affects the liver frequently or other areas such as the skin, lungs, lymph nodes, spleen, eyes, and small bones of the hands and feet.  Taber's Cyclopedic Medical Dictionary, at 1631 (16th illus. ed. 1989).

[3]Citations to the underlying administrative record are designated as "R."

applications were denied, and he thereafter requested a hearing before an administrative law judge ("ALJ").

3.      On January 11, 2018, ALJ Michael Carr held a video hearing at which Plaintiff—represented by counsel—and Vocational Expert Bernard Preston appeared and testified.  (R. at 133-73, 112.)  At the time of the hearing, Plaintiff was 37 years old as of the onset date.  He had a high school education and past relevant work as warehouse worker, janitor, and composite job of groundskeeper and cleaner (all medium exertion jobs).

4.      The ALJ considered the case *de novo* and, on November 15, 2018, issued a written decision denying Plaintiff's applications for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, he filed the current action, challenging the Commissioner's final decision.[4]  (Docket No. 1.)

5.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 11, 15.)  Plaintiff filed a response on July 30, 2020 (Docket No. 15), at which time this Court took the motions under advisement without oral argument.  For the reasons that follow, Plaintiff's motion is denied, and Defendant's motion is granted.

6.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v.

---

[4]The ALJ's November 15, 2018, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 389, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7.     "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8.     The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing

3

whether a claimant is disabled.  482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

9.    The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10.    Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step is divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C.

§ 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

11.     The ALJ analyzed Plaintiff's claim for benefits under the process set forth above.  At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since April 15, 2011, after engaging in substantial gainful activity from February 17, 2011, as a janitor.  (R. at 114.)  At step two, the ALJ found that Plaintiff has the following severe impairment:  obesity; varicose veins, venous insufficiency, status post-surgery; obstructive sleep apnea; degenerative disc disease of the lumbar and thoracic spine; respiratory disorder; hypertension; sarcoidosis; and right foot plantar fasciitis.  Id. at 115.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id. at 119.

12.     Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, with exceptions, Plaintiff can perform occasional postural activities; frequent overhead reaching; frequent handling/fingering; and the Plaintiff can tolerate frequent exposure to fumes, odors, dust, gases, and other pulmonary irritants. (R. at 119.)

13.     At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  (R. at 125.)  At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  The Vocational Expert opined that a hypothetical claimant with similar background, age, work experience, and RFC as Plaintiff could perform such occupations as cafeteria attendant, garment sorter, and price

marker (all light exertion work).  (R. at 126.)  Accordingly, the ALJ found that Plaintiff is not disabled.  (R. at 127.)

14.    Plaintiff appealed to the Appeals Council and, on August 9, 2019, the Appeals Council denied review (R. at 1).  Plaintiff attempted to introduce medical records after the ALJ hearing in January 2018 (R. at 9-91) but the Appeals Council concluded that these records did "not show a reasonable probability that it would change the outcome of the decision" and did not exhibit that evidence (R. at 2).  He also produced medical records after the ALJ's November 15, 2018, decision (R. at 92-102) but the Appeals Council concluded that these records should not be considered because they post-date the ALJ's decision date (R. at 2).  The Council invited Plaintiff to apply again for coverage after November 15, 2018 (R. at 2).

15.    Plaintiff argues, first, that Appeals Council improperly failed to consider material evidence of treatment he received in the months while his appeal was pending (Docket No. 11, Pl. Memo. at 1, 9-12).  He contends that Dr. Samuel Balderman's consultative evaluation in October 2015 (diagnosing Plaintiff having venous insufficiency and hypertension but finding no pulmonary disease, R. at 441, 124-25) that the ALJ gave substantial weight (R. at 124-25) was stale given Plaintiff's subsequent diagnosis of sarcoidosis (Docket No. 11, Pl. Memo. at 1, 12-15).  Plaintiff concludes that the ALJ also failed to give good reasons for rejecting the opinions of treating source Dr. Mohammad Khan (R. at 917-20; Docket No. 11, Pl. Memo. at 1, 15-21).  For the reasons that follow, this argument is rejected.

16.    As for the Appeals Council's action on the post-ALJ hearing medical evidence, Plaintiff argues that Appeals Council used boilerplate language without further

6

explanation why the post-hearing evidence was inadmissible (Docket No. 11, Pl. Memo. at 11).  Defendant responds that this evidence does not call the ALJ's decision into question (Docket No. 14, Def. Memo. at 18-20).  Plaintiff replies that defense counsel merely provides post hoc rationalizations and did not present the Commissioner's argument for rejecting the post-hearing medical record (Docket No. 15, Pl. Reply at 2).

17.     Plaintiff seeks inclusion of his treatment prior to the ALJ's decision.  The issue is whether these additional medical records would change the ALJ's findings, see Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988) (see Docket No. 14, Def. Memo. at 18-19).  The Appeals Council considers new evidence only when it relates to the period before the ALJ's decision, 20 C.F.R. § 404.970(b) (Docket No. 14, Def. Memo. at 18).

18.     The medical record from January to November 2018 involved Plaintiff's right shoulder complaints and Plaintiff's complaints about numbness in that shoulder was considered by the ALJ (R. at 121; Docket No. 14, Def. Memo. at 19).  While this Court need not scrutinize the post-hearing evidence, cf. Mendez v. Comm'r, No. 17CV6824, 2019 WL 2482187, at *4 (W.D.N.Y. June 14, 2019) (Siragusa, J.), upon reviewing the record here for Plaintiff's treatment from January to November 2018 this Court agrees with the Appeals Council's conclusion that this record would not change the ALJ's result.

19.     Plaintiff focuses on an August 2018 EMG nerve conduction study results (R. at 55; Docket No. 11, Pl. Memo. at 11).  Prior to that study, Plaintiff reported mild pain (5 on a 0-10 scale) in his right arm (R. at 55).  The EMG nerve conduction study found that "there was electrical evidence for a moderate carpal tunnel syndrome on the right," with the doctor recommending carpal tunnel release surgery (R. at 56).  Plaintiff concludes that this is counter to the ALJ's RFC finding that he could perform frequent

handling and fingering and that the jobs the Vocational Expert found required handling and fingering (Docket No. 11, Pl. Memo. at 11).

20.     As Plaintiff notes (id., citing R. at 163), the ALJ was aware of his subjective complaints about numbness and weakness that would keep him from work for two and a half to three hours.  The Vocational Expert also was aware of this restriction and noted the amount of permissible time an employee in these positions could be off task (R. at 170-72).  So a further diagnosis of carpal tunnel syndrome and recommended surgery would not change the ALJ's finding of Plaintiff's capability to perform light work.  Plaintiff's argument regarding Appeals Council consideration of post-ALJ decision treatment records is denied.

21.     He also seeks inclusion of his medical records between the ALJ's decision and the Appeals Council's decision.  This is under a different standard since the ALJ's decision date presents the cut off for consideration of the record, see 20 C.F.R. § 404.970(b).  The Appeals Council need only consider new medical evidence rendered on or before the ALJ's decision and not after.  Plaintiff's proper remedy for post-decision claims is to file a new application for benefits starting from that period.  Plaintiff's argument to remand for consideration of post-decision medical evidence is denied.

22.     On consideration of Dr. Balderman's opinion as to Plaintiff's pulmonary condition (R. 440 (normal lung and chest function)), the ALJ noted he had some restrictive disease, but Plaintiff's cooperation was poor (R. at 125).  Plaintiff now argues that he had a significant development following the October 22, 2015, evaluation that he was diagnosed on March 19, 2016, with bilateral pneumonia associated with mediastinal lymphadenopathy (R. at 589).  On March 21, 2016, Plaintiff had imaging of his lungs

reveal multiple nodules in both lungs and a May 16, 2016, biopsy disclosed sarcoidosis (R. at 644, 678; Docket No. 11, Pl. Memo. at 13).  All of this Plaintiff concludes rendered the earlier opinion stale (Docket No. 11, Pl. Memo. at 13).

23.    Defendant counters that the ALJ properly consider Dr. Balderman's opinion as well as other medical evidence (Docket No. 14, Def. Memo. at 20-23).

24.    This Court notes that the ALJ ultimately considered Plaintiff's sarcoidosis as a severe impairment but, after noting that there was no specific listing for sarcoidosis, found that Plaintiff did not have any objective signs for meeting any listing due to sarcoidosis, specifically not meeting Listing 3.00 for respiratory disorder (R. at 119, 123). The ALJ based his finding on the treatment record (R. at 123), which he also found supported Dr. Balderman's earlier opinion and examination (R. at 125).  Thus, the ALJ was not resting the RFC on a stale medical opinion but upon the medical evidence as a whole.  Plaintiff's objection on this basis is denied.

25.    Plaintiff replies that Defendant did not consider his argument, that Dr. Balderman's opinion became stale after Plaintiff was diagnosed and treated for sarcoidosis (Docket No. 15, Pl. Reply Memo. at 2-3).

26.    As for Dr. Khan's treating opinion, he found that Plaintiff's sarcoidosis and sleep apnea symptoms would cause him to be off task 30% of a workday (R. at 918; Docket No. 11, Pl. Memo. at 15).

27.    The ALJ gave little weight to Dr. Khan's opinion because, in part, the ALJ found it was internally inconsistent to find that Plaintiff could work full time but would be off task more than 30% of the time (R. at 124; see also R. at 917, 918).

28.    By rejecting Dr. Khan's opinion, Plaintiff concludes that the ALJ had to default to his own lay opinion to craft the RFC (Docket No. 15, Pl. Reply Memo. at 4).

29.    Defendant argues that the ALJ properly considered this opinion (Docket No. 14, Def. Memo. at 23-25).

30.    Plaintiff rejects the stated reason by the ALJ that Dr. Khan's opinion is internally inconsistent because he was not making an occupational assessment (Docket No. 11, Pl. Memo. at 16).  But Dr. Khan was making an occupational assessment within his pulmonary specialty, opining on the one hand that Plaintiff can work eight hours a day but would be off task more than 30% of the time.  Dr. Khan provides the medical predicate for a Vocational Expert to conclude whether someone with Plaintiff's pulmonary condition can work a full day.

31.    The ALJ did not have medical evidence to show ongoing limitations due to Plaintiff's breathing and ALJ noted Plaintiff's admission that he did not consistently use his CPAP (R. at 124).

32.    While the ALJ may err in giving limited weight to Dr. Khan's opinion, there is substantial evidence to support the finding that the record does not contain objective medical findings of his limitation due to his breathing.  Thus, Plaintiff's motion for judgment seeking remand on this ground is denied.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 11) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 14) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:        January 5, 2021
              Buffalo, New York


                                        s/William M. Skretny
                                       WILLIAM M. SKRETNY
                                     United States District Judge